**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JEFFREY S. RANEN, SB# 224285
  E-Mail: Jeffrey.Ranen@lewisbrisbois.com
WILLIAM C. SUNG, SB# 280792
  E-Mail: William.Sung@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants, ARGENT HOTEL MANAGEMENT, LLC AND HIGHGATE HOTELS, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAWLA MAJDOUB, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARGENT HOTEL MANAGEMENT, LLC, a limited liability company; HIGHGATE HOTELS, L.P., a limited partnership; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br>Superior Court Case No. CGC-20-582921<br><br>**DEFENDANTS ARGENT HOTEL MANAGEMENT, LLC AND HIGHGATE HOTELS, L.P.'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>Action Filed:   February 13, 2020<br>Trial Date:     None Set |

**PLEASE TAKE NOTICE** that Defendants Argent Hotel Management, LLC ("Argent") and Highgate Hotels, L.P. ("Highgate") (collectively, "Defendants"), hereby remove the above-captioned action from the Superior Court of the State of California, for the County of San Francisco, to the United States District Court for the Northern District of California under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of this Notice of Removal, Defendants state as follows:

1. Removal is proper in this case because this Notice of Removal demonstrates that all requirements for removal under 28 U.S.C. 1332(d), the Class Action Fairness Act ("CAFA") are met.

2. On February 13, 2020, Plaintiff Khawla Majdoub ("Plaintiff") commenced this putative class action against Defendants by filing a Class Action Complaint ("Complaint") in the Superior Court of the State of California, for the County of San Francisco, bearing the case number CGC-20-582921. The Complaint alleges eight causes of action: (1) Failure to Pay Minimum and Straight Time Wages; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Timely Pay Final Wages at Termination; (6) Failure to Provide Accurate Itemized Wage Statements; and (7) Unfair Business Practices § 17200, *et seq.*

3. Plaintiff served the Complaint on Defendants on February 24, 2020. Declaration of Geri Williams-Fitts ("Williams-Fitts Decl."), ¶ 8. Accordingly, this Notice of Removal is timely filed within thirty days of service of process. 28 U.S.C. § 1446.

4. The Superior Court of the State of California, County of San Francisco, is located within the Northern District of California. Thus, venue is proper under 28 U.S.C. § 84(a) because this is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. No previous application has been made for the relief requested herein.

6. Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed, served, or received by Defendants in this action are attached hereto. Specifically:

   a. A true and correct copy of the Complaint, filed on February 13, 2020 and served on Defendants on February 24, 2020, is attached hereto as Exhibit 1.

   b. True and correct copies of the Summons and other notices served therewith are attached hereto as Exhibit 2.

   c. A true and correct copy of Plaintiff's Application for Complex Designation filed on February 13, 2020 is attached hereto as Exhibit 3.

   d. A true and correct copy of the state court's Case Management Conference Notice is attached hereto as Exhibit 4.

   e. True and correct copies of Plaintiff's Proof of Service of Summons on Defendants filed on March 2, 2020 are attached hereto as Exhibit 5.

      f.    A true and correct copies of Defendants' Answer, filed in state court and served on Plaintiff on March 20, 2020, is attached hereto as Exhibit 6.

7.    A true and correct copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, County of San Francisco, in accordance with 28 U.S.C. § 1446(d).

# I. REMOVAL IS PROPER DUE TO THE JURISDICTION CONFERRED UNDER THE CLASS ACTION FAIRNESS ACT

8.    This case is subject to removal under the CAFA of 2005.  Pub. L. No. 109-2, 119 Stat. 4.  28 U.S.C. §§ 1332(d) and 1453.

9.    Under CAFA jurisdiction, unlike other diversity jurisdiction cases, "no antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

10.    Plaintiff purports to bring this suit on behalf of hourly-paid, non-exempt current and former employees employed by Defendants within the State of California.  Complaint, at ¶ 2.  This class case, brought under California Code of Civil Procedure section 382, is a statute similar to a class action as defined in rule 23 of the Federal Rules of Civil Procedure.  28 U.S.C. § 1332(d)(1)(B).

11.    This is a putative class action in which: (1) there are 100 or more members in Plaintiff's proposed class; (2) at least some of the members of the proposed class have different citizenship from Defendants; and (3) the aggregate amount in controversy exceeds $5,000,000.00.  Thus, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) and 1453(b).

## A. Diversity of Citizenship Exists.

12.    At least one member of the proposed class is a citizen of a state different from Defendants.  28 U.S.C. § 1332(d)(2)(A).

13.    For purposes of diversity, a natural person is a "citizen" of the state in which they are domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place they reside with the intention to remain or to which they intend to

1  return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

2  14. Plaintiff Khawla Majdoub is a citizen of California. Plaintiff resides in California, and worked and earned wages in California for Defendants from October of 2000 to October 2019. Complaint, at ¶ 7.

15. Likewise, the members of the proposed class are Defendants' current and former employees within the State of California. Complaint, at ¶ 23.

16. Defendant Highgate, an unincorporated association, is a citizen of the state where its principal place of business is located and the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). Defendant Highgate is a limited partnership organized under the laws of Delaware. Williams-Fitts Decl., at ¶ 3. At all relevant times, its principal place of business and corporate headquarter is located in Irving, Texas. Williams-Fitts Decl., at ¶ 3. As such, Highgate is a citizen of Delaware and Texas.

17. Defendant Argent, an unincorporated association, is a citizen of the state where its principal place of business is located and the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). Defendant Argent is a wholly owned subsidiary of Highgate. Argent is a limited liability company organized under the laws of Delaware. Williams-Fitts Decl., at ¶ 4. At all relevant times, its principal place of business and corporate headquarter is located in Irving, Texas. Williams-Fitts Decl., at ¶ 4. As such, Argent is a citizen of Delaware and Texas.

18. The diversity requirements of CAFA require only that the citizen of any member of the class be diverse from any defendant. Here, because the named Plaintiff is a California citizen, because Defendants Argent and Highgate are citizens of Delaware and Texas, the "minimal diversity" requirement under CAFA is satisfied. 28 U.S.C. § 1332(d)(2)(A).

**B. Defendants Satisfy the Amount in Controversy Requirement.**

19. Defendants dispute that this class could ever be certified, and Defendants dispute that they are liable for any of Plaintiff's claims asserted in the Complaint. Nevertheless, the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000.00. 28 U.S.C. § 1332(d)(2), (6). Although Plaintiff does not plead a specific amount of damages, Defendants can demonstrate that the aggregate amount in controversy exceeds $5,000,000.00. *See*

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").

20. Plaintiff alleges that Defendants failed to pay Plaintiff and the putative class members for all hours worked, including minimum, straight time, and overtime wages. Plaintiff additionally alleges that Defendants failed to provide Plaintiff and the putative class with meal and rest periods. Plaintiff further alleges that Defendants are liable for waiting time penalties, for failure to provide accurate wage statements, and for unfair business practices.

21. Plaintiff seeks the following relief on behalf of themselves and the putative class:

    a. Compensatory damages for unpaid minimum, straight time, and overtime wages;

    b. Damages for unpaid meal and rest period premiums;

    c. Penalties for inaccurate wage statements;

    d. Waiting time penalties;

    e. Restitution under Business and Professions Code section 17203;

    f. And reasonable attorneys' fees.

22. Defendants' notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at p. 84. In showing the amount in controversy, Defendants "may rely on reasonable assumptions." *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . . . [and] [i]n that sense, the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Id.* at p. 927. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Ibid.* (quotation marks omitted).

23. It is permissible for Defendants, when the Complaint does not provide clear indications of the amount in controversy, to rely on putative class members' employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in

controversy. *See ibid.* Defendants may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). Defendants do not need to "provide evidence proving the assumptions correct." *Arias*, 936 F.3d at p. 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Ibid.* (citation omitted).

### 1. Unpaid Overtime and Minimum Wages and Liquidated Damages

24. California *Labor Code* section 510 generally provides that an employer must pay all overtime to non-exempt employees who work more than 8 hours in one workday or more than 40 hours in one workweek (whichever is greater). All overtime hours worked over eight hours, but less than 12 hours, in a workday and the first eight hours on the seventh consecutive workday must be paid to non-exempt employees at a rate of one and one-half their regular rate of pay. All overtime hours worked over 12 hours in a workday or over eight hours on the seventh consecutive workday must be paid to non-exempt employees at a rate of two times their regular rate of pay.

25. *Labor Code* section 1194 provides for the recovery of unpaid minimum wages in a civil suit. *Labor Code* section 1194.2 provides for the recovery of liquidated damages, which are equal to the amount of unpaid minimum wages.

26. "In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). For the unpaid minimum, straight time, and overtime wages claim, the Complaint claims Defendants "maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages. Defendants regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class properly for all the time they have actually worked, even though the realities of Defendants' operations are such that it is possible, practical, and feasible to count and pay for work time to the minute. As a result of this time rounding, Defendants frequently paid Plaintiff and the Class less than all their work time, some of which should have been paid at the overtime rate. . . . Additionally, Plaintiff and the Class were required to wait in line in order to clock into work at the beginning of each workday, and after returning from lunch." Complaint, at ¶ 16. The proposed class period is defined as "four years

before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint, at ¶ 23.

27. The Complaint alleges two different theories of violations leading to unpaid minimum, straight time, and overtime liability, specifically, an unlawful rounding practice and time spent waiting to clock in and/or out. Based upon Plaintiff's assertion that Defendants had a "policy and practice of" committing several violations, the amount in controversy analysis utilizes a reasonable assumption of 30 minutes of unpaid minimum wages and unpaid overtime per week per employee. *See Arias*, 936 F.3d at p. 923 (defendant's assumption of a violation rate of 30 minutes of unpaid overtime per day was reasonable when plaintiff's complaint asserted "routine" violations).

28. Based on Defendants' employment data on non-exempt employees in California from February 13, 2016 through February 13, 2020 ("Employee Data"), there were approximately 2,029 employees who worked a total of approximately 190,334 workweeks. Declaration of William C. Sung ("Sung Decl."), at ¶ 4.

29. For the unpaid minimum wages claim, the current minimum wage of $13 per hour is utilized in making the amount in controversy calculation. *See Andrade v. Beacon Sales Acquisition, Inc.*, 2019 U.S. Dist. LEXIS 171460, No. CV-19-06963-CJC-RAOx, at *12 n.4 (C.D. Cal. Oct. 1, 2019) (accepting defendant's assumption of $12/hour as the minimum wage for calculating minimum wage damages as reasonable). By multiplying the minimum hourly rate of $13 by 0.5, representing one half hour of unpaid minimum wages per week, and multiplying that product again by the number of workweeks, 190,334, the amount in controversy is approximately $1,224,855.

30. For each employee employed in the class period, that employee's final hourly rate was multiplied by 0.5 to achieve the overtime premium rate. Sung Decl., at ¶ 4. That overtime rate was multiplied by 0.5, representing the 30 minutes of unpaid overtime per week, and multiplied again by the number of workweeks the employee was employed during the statutory period. Sung Decl., at ¶ 4. This data was then summed for each employee to reach the amount in controversy for the unpaid overtime wages as approximately $1,048,265. Sung Decl., at ¶ 4.

31. Plaintiff seeks liquidated damages. Complaint, at ¶ 7 of the Prayer for Relief. Because liquidated damages is equal to the amount of unpaid wages, the amount in controversy for the liquidated damages is approximately $2,273,120.

### 2. Failure to Provide Meal and Rest Periods

32. *Labor Code* section 512, subdivision (a) provides that employers must provide meal periods, generally, for employees who work more than five hours per day, and that the meal period must be an uninterrupted 30 minutes where the employee is free from all duties. The California Wage Orders generally provide that employers shall offer a ten minute, uninterrupted rest period per four hours of work, or a major fraction thereof. *Brinker Restaurant Crop. v. Superior Court*, 53 Cal.4th 1004, 1028-29 (2012). *Labor Code* section 226.7 provides that employers who fail to provide a meal or rest period are subject to a premium payment of one hour's wages to the employee.

33. Plaintiff asserts that the meal and rest period class consists of all of Defendants' hourly paid, non-exempt California employees employed at any time within the four years preceding the filing of the Complaint. Complaint, at ¶ 23.

34. For meal periods, the Complaint alleges that "Defendants maintained a systematic, company-wide policy and practice of: . . . (b) Failing to provide employees with timely and duty free meal periods in compliance with the California Labor Code and IWC Wage Order, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal periods violation occurred." Complaint, at ¶ 4. Plaintiff also stated in the Complaint that Defendants "regularly, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work." Complaint, at ¶ 17, *see also* Complaint, at ¶ 51.

35. For rest periods, the Complaint alleges that Defendants maintained a systematic, company-wide policy and practice of: . . . (c) Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage

Order, and failing to pay an additional hour's pay for each workday a rest period violation occurred." Complaint, at ¶ 4. Plaintiff also stated in the Complaint that Defendants "regularly, but not always, required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Class for rest periods that were not authorized or permitted." Complaint, at ¶ 18.

36. Based on these allegations, which is that Defendant had a "policy or practice" of providing non-compliant meal and rest periods, Defendants reasonably assume that approximately two to three meal and rest period violation per week. *See Elizarraz v. United Rentals, Inc.*, 2019 U.S. Dist. LEXIS 62065, No. 2:18-CV-09533-ODW(JC), at *3-4 (C.D. Cal. Apr. 9, 2019) (finding violation rates of 50% for meal period claims reasonable in light of pattern and practice allegations); *Avila v. Kiewit Corp.*, 789 Fed.Appx. 32, 33-34 (9th Cir. 2019), (holding that words such as "frequently" or "regularly, but not always" can support an inference that 100% of employees received at least one violation.).

37. From February 13, 2016 through February 13, 2020, Plaintiff employed approximately 2,029 employees who worked approximately 190,334 workweeks. Sung Decl., at ¶ 6-7.

38. Utilizing a violation rate of two to three meal and rest periods per week, each employee's final rate of pay—the premium payment—is multiplied by the number of workweeks that the employee worked within the statutory period. Sung Decl., at ¶ 6-7. Summing this data for each employee reveals the amount in controversy for the meal period claim is approximately $8,386,118 to $12,579,177, and the amount in controversy for the rest period claim is approximately $8,386,118 to $12,579,177. Sung Decl., at ¶ 6-7.

### 3. Waiting Time Penalties

39. *Labor Code* sections 201 and 202 require that employees be paid all wages owed to them upon their termination from employment. *Labor Code* section 203 provides for waiting time penalties if an employer willfully violates these provisions. The penalties are assessed at an

amount equal to the employee's daily wages for each day the wages remain unpaid, up to thirty days' wages.  Cal. Lab. Code § 203.

40. The waiting time penalties class consists of all of Defendants' hourly paid, non-exempt California employees employed within three years preceding the filing of the Complaint.

41. Plaintiff asserts in the Complaint that "Defendants maintained a systematic, company-wide policy and practice of: . . .(d)Willfully failing to pay employees all minimum wages, straight time wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminated."  Complaint, at ¶ 4; *see also* Complaint, at ¶ 19.

42. The number of non-exempt employees terminated between February 13, 2016 through February 13, 2020 is approximately 926.  Sung Decl., at ¶ 8.

43. Based upon Plaintiff's assertion that Defendants had a "policy or practice" of failing to pay all wages upon termination, Defendants assume a 100% violation rate for the waiting time penalties.  *See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411-HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint).

44. Based on this violation rate, within the Employee Data, each employee's final hourly rate of pay was multiplied by eight hours to achieve their daily rate, then multiplied by 30 days.  Sung Decl., at ¶ 8.  Summing this data for each employee reveals the amount in controversy for this claim to be approximately $2,793,687.  Sung Decl., at ¶ 8.

### 4. Wage Statement Violations

45. *Labor Code* section 226(a) requires that nine categories of information be included on each pay stub, including: (1) gross wages earned; (2) total hours worked by each employee; (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all deductions; (5) net wages earned; (6) the inclusive dates of the period for which the employee is being paid; (7) the employee's name and identification number or the last four digits of the employee's social security number; (8) the name and address of the legal entity

that is the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each holy rate by the employee.  If there is a violation, the damages are governed by *Labor Code* section 226(e), which provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees."

46.     *Labor Code* section 226(e) claims for statutory penalties have a one-year statute of limitations.  *See* Code Civ. Proc. § 340(a).  Thus, the applicable statute of limitations for this claim is from February 13, 2019 to February 13, 2020.

47.     Plaintiff asserts in the Complaint that "[t]hroughout the statutory period, Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing Defendants' address, all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law)."  Complaint, at ¶ 20.

48.     Due to the language in the Complaint alleging that Defendants maintained a "policy and practice" of committing wage statement violations, Defendants assume a 100% violation rate.

49.     There are approximately 1,415 non-exempt employees employed from February 13, 2019 to February 13, 2020.  Sung Decl., at ¶ 9.  In that same time period, the total number of pay periods is approximately 28,962.  The amount in controversy is calculated by multiplying the number of initial pay periods for each employee by the penalty rate, $50.  Sung Decl., at ¶ 9.  The remaining 27,547 pay periods are then multiplied by $100.  Sung Decl., at ¶ 9.  No individual employee's penalty exceeded $4,000 in this calculation.  Sung Decl., at ¶ 9.  This results in approximately $$2,825,450 in penalties for the *Labor Code* section 226 wage statement claim.

1 | Sung Decl., at ¶ 9.

### 5. Attorneys' Fees

50. For CAFA cases, "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Further, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Ibid*. "The Defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Ibid*.

51. All of the *Labor Code* provisions for which Plaintiff seeks damages include the provision of attorneys' fees.

52. In general, a 25% benchmark of the potential damages constitutes the potential attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that where attorneys' fees are permissibly used in calculating the amount in controversy, a benchmark of 25% of the common fund was appropriate). Though this is not a per se rule, a 25% benchmark of attorneys' fees is generally reasonable. *Arias v. Residence Inn*, 936 F.3d 920, 928 (9th Cir. 2019).

53. In the case at hand, even without including the attorneys' fees, the amount in controversy, which includes the unpaid minimum and straight time wages, unpaid overtime, liquidated damages, meal and rest period violations, waiting time penalties, and wage statement violations, is approximately $26,937,613 to $35,323,731. Applying a 25% benchmark to this sum results in attorneys' fees of approximately $6,734,403 to $8,830,933.

### C. The Putative Class Size Consists of More than 100 Members.

54. The aggregate number of class members in Plaintiffs' proposed class of California hourly paid, non-exempt employees employed from February 13, 2016 to February 13, 2020, is approximately 2,223. This is greater than the requisite 100 members required under 28 U.S.C. § 1332(d)(5)(B).

///

///

## II. THE REQUIREMENTS OF 28 U.S.C. § 1446 ARE MET

55. A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other papers from which it may be ascertained that the case is removable. 28 U.S.C. § 1446(b). Defendants were served with a copy of the Complaint on February 24, 2020. Williams-Fitts Decl. ¶ 8. Therefore, Defendants received a copy of the document from which it was ascertained that the case was removable, at the earliest on February 24, 2020. Accordingly, this Notice of Removal is timely filed.

## III. SERVICE OF NOTICE ON PLAINTIFFS AND STATE COURT

56. Defendants will promptly give Plaintiff written notice of filing of this Notice of Removal and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, for the County of San Francisco, where the action is currently pending, as required by 28 U.S.C. § 1446(d).

## IV. NO OTHER DEFENDANTS HAVE JOINED THE ACTION

57. There are no other Defendants that have been named or served in this action, thus there are no other Defendants to join in this Notice of Removal.

WHEREFORE, Defendants respectfully remove this action from the Superior Court of the State of California, for the County of San Francisco, bearing case number CGC-20-582921, to this Court pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453.

DATED: March 24, 2020            **LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ William C. Sung
Jeffrey S. Ranen
William C. Sung
Attorneys for Defendants, ARGENT HOTEL MANAGEMENT, LLC and HIGHGATE HOTELS, L.P.